**Joseph GERMANO et al., Plaintiffs,**

v.

**Otto KERNER, as Governor of the State of Illinois and Chairman of the State Electoral Board, et al., Defendants.**

**No. 63 C 291.**

United States District Court
N. D. Illinois.

May 7, 1965.

See also D.C., 220 F.Supp. 230.

Bernard Kleiman, of Kleiman, Cornfield and Feldman, and Lester Asher, of Asher, Gubbins and Segall, for plaintiffs.

Wm. G. Clark, Atty. Gen., for certain defendants.

Howard Robinson, of Sidley, Austin, Burgess & Smith, for Illinois Agricultural Ass'n, Clyde Beals, David Davis, Joseph R. Mallory, William McNight, Jr., Carl Schweinforth, Harold B. Steele, Mrs. Faye Stuebinger, intervenors.

Don H. Reuben, Jack S. Levin and Lawrence Gunnels, of Kirkland, Ellis, Hodson, Chaffetz & Masters, for Wm. J. Scott, State Treas.

Before SCHNACKENBERG, Circuit Judge, and CAMPBELL and AUSTIN, District Judges.

CAMPBELL, District Judge.

The briefs filed in support of the instant motions to reconsider and vacate and the February 4, 1965, decision of the Illinois Supreme Court in Engle v. Kerner, 32 Ill.2d 212, 205 N.E.2d 33, indicate the need for additional comment by this court as to the underlying rationale of our Order of January 22, 1965. Especially provocative of comment is the argument made by the intervening defendants and defendant Scott that this court must, in light of the Engle decision,

relinguish its jurisdiction over this case to the state court. Apparently, the basis for such an argument is not to be found entirely in a reading of the Engle decision, but rather, in counsel's analysis thereof.

Our Order of January 22, 1965, is set forth as follows:

In obedience to and in implementation of the Remand Order of the Supreme Court herein dated July 20, 1964, it is hereby ordered:

1. That the plaintiffs amend within 10 days their complaint to include as parties defendant, and cause process to be issued and served on all present members of the Illinois General Assembly.

2. That because of the constitutional infirmities contained in certain provisions of Sec. 6 Article IV of the Illinois Constitution, S.H.A., and Ill.Rev.Stat. Ch. 46, Sec. 158–1 to 158–5, requiring the apportionment of State Senatorial districts on the basis of area, which provisions the Supreme Court has found herein to violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, no election of Illinois State Senators may hereafter be held pursuant to said constitutional provision and legislation.

3. That any implementation, amendment or substitution of all or part of the said defective portions of the said constitution or legislation be submitted to and approved by this court before the holding of any election pursuant thereto, to determine pursuant to the aforesaid mandate satisfactory compliance with the guidelines set forth in the related and applicable decisions of the United States Supreme Court.

4. That in the event no such implementation, amendment or substitution of the constitutionally defective method of election of Illinois state senators is approved by this Court, as above provided, a rule shall issue forthwith directing the parties defendant herein, including those added pursuant to paragraph 1 of this order, to show cause why all Illinois state senatorial seats shall not be filled at and by a general at-large election at the time presently scheduled for the 1966 elections, and every four years thereafter.

5. That this court retains jurisdiction to afford such relief as may be necessary to effectuate this Order.

■ The right of a court to declare a particular election system violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution can no longer be questioned. Once a court has made such a determination, only what constitutes appropriate judicial relief becomes paramount. It is this question, addressing itself to judicially fashioning a remedy to malapportionment, that was and is before this court. Our Order of January 22, clearly indicates the judicial remedy this court, in obedience to the July 20, 1964, Mandate of the United States Supreme Court, intends to apply.

Since Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, the courts and legal writers have been concerned with the problems inherent in attempting judicially to relieve malapportioned voting systems. One might reasonably suspect that the Supreme Court's belated consideration of patent apportionment abuses was due not so much to jurisdictional doubts as to remedial difficulties. In Baker v. Carr at pages 259–260, 82 S.Ct. at page 733 Justice Clark in his concurring opinion demonstrated this concern when he stated: "Finally, we must consider if there are any appropriate modes of effective judicial relief. The federal courts are of course not forums for political debate, nor should they resolve themselves into state constitutional conventions or legislative assemblies."

Notably in all of the more recent apportionment cases decided by the Supreme Court they conspicuously avoid the judi-

cial remedy issue usually by concluding that they "express no view on questions relating to remedies at the present time." Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568; Maryland Comm. for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1453, 12 L.Ed.2d 609; Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620; Lucas v. Forty-Fourth General Assembly of State of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632.

■ Apportionment is traditionally and necessarily a legislative function. Notwithstanding many ill-advised comments of its detractors to the contrary this fact has been generally acknowledged by the Supreme Court. (Reynolds v. Sims, 377 U.S. 533, 586, 84 S.Ct 1362, 1394, 12 L.Ed.2d 506; " * * * legislative reapportionment is primarily a matter for legislative consideration and determination * * * ") The Court appropriately continued by observing " * * * that judicial relief becomes appropriate only when a legislature fails to reapportion * * * ". The problem involved then is one of judicially remedying a malapportioned voting scheme without judicially interfering with recognized legislative functions and responsibilities.

Ours is historically and fundamentally a triune government of co-ordinate but necessarily separate departments. Our Constitution and traditions, appreciating Montesquieu's concern that a separation of powers is required in order that liberty of the people might be preserved, delegated to each department of government—executive, legislative and judicial —certain functions and responsibilities. Accordingly, we are conditioned to scrupulously reviewing possible invasions by one government department of the functions of still another department. The fact that a federal court and a state legislature are involved hardly warrants a digression from this fundamental principle.

A second and for the most part legally esoteric though necessarily related problem concerns the possibility that courts in redressing malapportionment situations might exceed the bounds of traditional equitable remedies. Inveterately courts of equity in properly finding legislation to be constitutionally invalid have enjoined the continued use of such legislation. On the other hand, equity courts in fashioning injunctive remedies have painstakingly sought to avoid the entering of mandatory injunctions where continued court supervision would be required. Further, and of most importance, with the possibility of one minor exception not relevant to the instant discussions (the conveying of real property), courts of equity have persistently desisted from entering orders which would require the court itself to perform the specific act necessary to obtain the desired results.

We suggest that the remedy we have indicated in our Order of January 22, will not only comply with the letter and the spirit of the Supreme Court Per Curiam opinion of June 22, 1964, herein, and the Courts other apportionment decisions, but also, that it will in no way do violence to the traditional concept of three distinct bodies of government or to equity precedent relative to injunctive relief.

Although conscious of the problems already alluded to it seems to us that judges and legal writers heretofore concerned with judicially redressing malapportionment have overlooked what might well prove to be not only the most legally sound but also the least suspect and most appropriate method of judicial relief.

Recognizing these considerations our Order of January 22, in summary declares invalid an Illinois unconstitutional apportionment scheme and enjoins the conduct of future elections thereunder.

■ Notably the Order does not mandatorily enjoin the Illinois Legislature to reapportion the State's senatorial districts. We suggest that no order should or need be entered on the legislature to reapportion since we find no constitu-

tional requirement demanding of a state that it elect via apportionment and geographical representation, even assuming that such apportionment is on a proportional population basis. Reapportionment or apportionment *per se* is not a necessary prerequisite to having a valid election scheme. If a state legislature does not want an apportioned election system we question the authority of any court to order such a legislature to form election districts. Absent any apportionment scheme a state would have the best, legally (if not necessarily practically) perfect realization of the mathematical "one man—one vote" principle. If this latter situation, unquestionably a constitutionally valid one, were what a legislature wanted, the courts in our opinion would be without power to force an apportionment scheme upon such a legislature or the people of its state.

The essence of such relief is found in the realization that one of the cures of malapportionment is nonapportionment —for that matter it is mathematically the only perfect solution. Also, on the practical side, the holding of such a Damoclean sword over the head of a legislative body should do much to relieve such a body of what otherwise might prove to be a state of diffidence. Practically, if not legally, legislatures would seem to owe the people of a state an apportioned system for electing legislators. Legislators who deny the people this right should not reasonably expect to be retained in office by a voting populace which they have exacerbated.

Apropos the appropriateness of our Order we here observe for the first time in this or in the state court, that the Illinois Constitution itself (Art. IV, Sec. 8) specifically provides that in the event apportionment is not realized elections are to be conducted on an at-large basis.

Our Order goes on to provide that should the Illinois Legislature in keeping with its authority decide to adopt a new apportionment scheme, then that scheme must be presented to and approved by this court, the court which found the Illinois prior plan to have been invalid. However, such a provision in no way judicially requires the legislature to apportion the state.

Counsel for defendant Scott and the intervening defendants cavalierly suggest that as a necessary consequence of the decision by the Illinois Supreme Court in Engle this court must vacate its Order of January 22, 1965, (entered prior to the Engle decision) and abstain from the further exercise of jurisdiction in a case fully tried and appealed on its merits, and having been filed long before Engle.

In support of this contention reliance is placed on the wording of the Engle decision, three United States Supreme Court decisions, (Maryland Committee v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595; Scranton v. Drew, 379 U.S. 40, and Forty-Fourth Gen. Assembly v. Lucas, 379 U.S. 693, 85 S.Ct. 715, 13 L.Ed.2d 699) and finally on Sec. 2284(5) of Title 28, U.S.C. We feel the above cited decisions and statute are unavailing to defendants' contention. We consider first Sec. 2284(5), then the cited Supreme Court decisions and finally Engle.

Defendants' reliance on Sec. 2284(5) is conspicuously absent any supporting judicial authority. A reading of paragraph two of Sec. 2284(5) explains the absence of authority in support of defendants' argument and clearly establishes its inapplicability to the instant case. The paragraph reads as follows:

"A district court of three judges shall, *before final hearing*, stay any action pending therein to enjoin, suspend or restrain the enforcement or execution of a State statute or order thereunder, whenever it appears that a State court of competent jurisdiction has stayed proceedings under such statute or order pending the determination in such State court of an action to enforce the same. If the action in the State court is not prosecuted diligently and in good faith, the district court of three judges may vacate its stay after hearing upon ten days notice served upon the attorney

general of the State." (emphasis added)

■ The instant case, jurisdiction having first attached in this court over two years ago, has been fully tried on the merits, and as hereinabove observed, fully appealed on its merits. Further, prior to the filing of the instant motions to vacate, and prior to the Engle decision, this court in compliance with the Supreme Court Mandate entered its order granting plaintiffs proper relief. Simply stated the posture of this case is not "before final hearing".

■ Additionally, a review of the history and legislative intent of paragraph two of Sec. 2284(5) clearly discloses its incompatibility with the instant facts. It was intended to safeguard abuses of the interlocutory injunction process, to speed up ultimate judicial determination of the cases and finally to permit state courts to determine in the first instance matters of state law. 49 Cong.Rec. 4773 (1913). In this regard in Chicago G. W. Ry. v. Kendall, 266 U.S. 94, 97, 45 S.Ct. 55, 69 L.Ed. 183, the Court commented that the Congressional purpose of Sec. 266 (predecessor to paragraph two of Sec. 2284(5) was " * * * to prevent undue delay in enforcing state legislation and action through federal intervention * * * " Also in Ex parte Metropolitan Water Co., of West Virginia 220 U.S. 539, 544, 31 S.Ct. 600, 55 L.Ed. 575, the Court acknowledged the limited application of the statute to interlocutory injunction situations.

Obviously, here we are beyond the interlocutory injunction stage. We have already entered a final permanent injunction. Further, not only would our turning of this case over to the Illinois Supreme Court (assuming it would want the case) fail to hasten its final disposition (ignoring that a final disposition has already been reached) but, in light of the more favorable and expeditious appeal procedure purposely made available from this statutory three-judge court (Title 28, U.S.C. § 1253) as opposed not only to the slower but uncertain United States

Supreme Court review of decisions by the Illinois Supreme Court, (Title 28, U.S.C. § 1257) would most probably occasion delays sought to be precluded by the very statute upon which defendants rely. As to the last mentioned purpose of paragraph two of Sec. 2284(5), permitting state courts to make necessary determinations of state law, we will consider this point in detail later in this memorandum.

Although case law dealing with Sec. 2284(5) is sparse, the following two cases indicate the scope of the statute and its inapplicability to our situation. In General Outdoor Advertising Co. v. Williams, 1 Cir., 12 F.2d 773, cert. den. 273 U.S. 721, 47 S.Ct. 111, 71 L.Ed. 858, the First Circuit Court of Appeals in reversing a district court (9 F.2d 165) held that the district court was in error in dismissing a suit properly brought to the federal court notwithstanding the pendency of a prior suit instituted by the same complainants in the state court and involving the same subject matter and seeking the same interlocutory injunctive relief. The district court had relied on Sec. 266 of the Judicial Code, predecessor to paragraph two of Sec. 2284(5).

■ More recently, definitely apropos and in keeping with legislative intent, in Bush v. Orleans Parish School Bd., D.C., 190 F.Supp. 861, affd. Per Curiam, 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed. 806, a three-judge district court (E.D.Louisiana) in a learned decision denied a paragraph two Sec. 2284(5) motion to stay its action pending the outcome of a state court proceeding where, as here, the state suit was not brought to enforce the statute but rather to enjoin its enforcement. The court relied on the express wording of the statute which requires of the state court that it be one brought "to enforce" and not to enjoin the state legislation. The legislative history and background of paragraph two of Sec. 2284(5) support this conclusion. This history shows the section was intended to permit defendants, represented necessarily by a state attorney general, to hasten judicial determination in interlocutory injunction sit-

uations by having the federal court defendants file as plaintiff in a state court action in favor of the constitutionality of the questioned legislation.

In citing Maryland Committee v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595, defendants' brief quotes from the decision as follows (377 U.S. at 674, 84 S.Ct. at 1439):

> "We applaud the willingness of state courts to assume jurisdiction and render decision in cases involving challenges to state legislative apportionment schemes."

Tawes, as well as Harris v. Shanahan, 192 Kan. 183, 387 P.2d 771, a case cited and approvingly commented on by a Court footnote in Tawes, both concerned apportionment litigation initiated not only first but solely in the state courts. We question that the Court intended to extend this approval to cases such as we have here where jurisdiction first attached in the federal court.

Reliance on Scranton v. Drew, 379 U.S. 40, 85 S.Ct. 207, 13 L.Ed. 107, is equally misplaced. In remanding the case back to the three-judge district court the Court did not as defendants infer; 1) order the district court to dismiss or stay its handling of the case "* * * in light of the state supreme court's assumption of jurisdiction", or 2) order the federal court to accede to state court decisions on matters of federal constitutional law. The Court's language instructs the district court to further consider "* * * in light of the decisions supervening since the entry of the judgment of the District Court". The word decisions is plural and has reference to the apportionment cases decided by the Supreme Court June 15, 1964, which cases are cited at page 41 of the opinion, at page 207 of 85 S.Ct.

Forty-Fourth General Assembly of Colorado v. Lucas, 379 U.S. 693, 85 S.Ct. 715, 13 L.Ed.2d 699, strongly suggests to three-judge district courts such as this that in the exercise of a prerogative available to such courts they refrain from deciding issues of purely state law where a state court indicates its intention expeditiously to resolve such issues. We appreciate that this expression of the Court's preference as to the method it would prefer in the handling of these matters is promulgated with full awareness of and yet without rejecting its earlier decision in Florida Lime and Avocado Growers Inc., v. Jacobsen, 362 U.S. 73, 80, 81, 80 S.Ct. 568, 573, 4 L.Ed.2d 568, wherein it held that three-judge courts have "* * * jurisdiction over *all* claims raised against the statute".

Salient to this point is the also recent language of the Court in Davis v. Mann, 377 U.S. 678, 690, 691, 84 S.Ct. 1441, 1447, 1448, 12 L.Ed.2d 609, which reads as follows:

> "Appellants' contention that the court below should have abstained so as to permit a state court to decide the questions of state law involved in this litigation is without merit. Where a federal court's jurisdiction is properly invoked, and the relevant state constitutional and statutory provisions are plain and unambiguous, there is no necessity for the federal court to abstain pending determination of the state law questions in a state court. McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622. *This is especially so where, as here, no state proceeding has been instituted or was pending when the District Court's jurisdiction was invoked.* We conclude that the court below did not err in refusing to dismiss the proceeding or stay its action pending recourse to the state courts." (emphasis added)

We have already indicated our intention to comply with the spirit of Lucas and avoid deciding ancillary issues of state law. We were requested by the parties in this case, prior to our Order of January 22, 1965, to decide issues of state law such as the possible severability of portions of the State election statute we held invalid. We declined this request. Parenthetically it might be observed that it was after our declination that newly acquired attorneys for defendant Scott

sought to have the same issues decided by the Illinois Supreme Court in the Engle case.

To the extent that it might be deemed necessary or advisable we reaffirm our intention not to impose ourselves upon Illinois court determinations of issues solely decidable on the basis of Illinois law. However, we make this observation with some reservation in light of the Engle decision.

The Engle case as already noted, was filed in the Illinois courts subsequent to plaintiffs having filed this case. The plaintiff Engle is not a party to this case and the plaintiffs in this case are not parties to Engle. The issues raised by the pleadings and later presented to the Illinois Supreme Court concerned plaintiff Engle's contention that Illinois 1954 reapportionment amendment was violative of the State Constitutional referendum provision relating to amendments to the Illinois Constitution—i. e. Art. XIV of the Illinois Constitution. The issues raised were ones of State law. However, at the time Engle was decided by the Illinois Supreme Court this court, in obedience to the Supreme Court Mandate, in our Order of January 22, 1965, had already held invalid as violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, those portions of the 1954 reapportionment amendment (Sec. 6, Art. IV, Illinois Constitution) and implementing statutes (Ch. 46 Sec. 158–1 to 158–5, Ill.Rev.Stat.) dealing with apportionment of the State's senatorial districts. Although possibly through some oversight, this fact is not acknowledged in Engle, the decision does mention the United States Supreme Court's opinion in this case and therefrom infers the unconstitutionality of only parts of the State senate apportionment plan.

Engle also discusses, although there is grave question as to whether it decides or merely comments on, some of the severability issues initially presented to us. To the extent that Engle does decide such severability issues on the basis of Illinois

law we, of course, respect those decisions. Engle correctly states that the State's apportionment scheme must comply with the provisions of the Illinois Constitution as interpreted by the Illinois Supreme Court.

However, while we appreciate and welcome the Illinois Supreme Court's concern with the problems related to Illinois apportionment legislation, we must and do take issue with what appears to have been at least a slight oversight if indeed not sheer presumption by the court where at pages 40 and 41 of 205 N.E.2d it states: "As the final forum available in this State, it is our responsibility to construe and apply provisions of our State *and the Federal constitutions* as related to the problems of legislative reapportionment." (emphasis added) We trust that the learned court did not by this broad and somewhat ambiguous language mean to imply, as suggested by defendants' counsel, that issues arising in this case under the United States Constitution are to be decided by the Illinois Supreme Court and not this court. Lest there be any mistake on this matter we wish to make it clear that we here reaffirm our previous resolution of federal constitutional issues herein and should further such issues arise relative to further final determination of this case, we feel it our duty and obligation to decide such issues. It is not only repugnant to fundamental principles of law, but it comes in poor grace to have defendants' counsel now suggest that we can no longer properly perform our required judicial functions and that we must now abdicate to a state court, (notwithstanding that court's manifest judicial ability) the right to decide not only possible subsequently arising federal constitutional issues, but also such matters already decided by us.

One final comment on the Engle decision, lest defendants assume therefrom some false sense of security. In Engle, the court in making reference to and apparently deciding favorably as to its severability, states that the Illinois Constitutional requirement (Sec. 6) that the

State necessarily be divided into three distinct areas, i. e. the City of Chicago, the remainder of Cook County, and the rest of the State,— " * * * is not obnoxious *per se* * * *." (Engle, 205 N.E.2d p. 38)

We remind the defendants that although the Illinois Supreme Court can properly resolve unsettled areas of state law—viz. severability of the provision requiring tri-part division of the state— whether or not such a provision, albeit properly severable and valid under the state law, is or is not in keeping with the requirements of the Federal Constitution as enunciated by the Supreme Court is a decision which can be made in this instance only by this court. Therefore when Engle states in effect that a plan holding sacrosanct the lines of but one city within a state which at the same time requires the division of supposedly larger political units (counties) is not obnoxious *per se,* such statement is not as defendants' counsel suggest a federal constitutional adjudication. (See Reynolds v. Sims, 377 U.S. 533 pp. 577 through 581, 84 S.Ct. 1362, 12 L.Ed.2d 506.) This federal court will consider and adjudicate such a federal constitutional question if and when it is presented to this court in an apportionment scheme pursuant to our Order of January 22.

In keeping with the Court's language in Roman v. Sincock, 377 U.S. 695, 710, 84 S.Ct. 1449, 12 L.Ed.2d 620, and Reynolds v. Sims, 377 U.S. 533, 556 and 578, 84 S.Ct. 1362, 12 L.Ed.2d 506, we cannot and will not dictate to the Illinois Legislature the terms of apportionment legislation to be subsequently submitted to us for approval. We do, however, once again respectfully direct the attention of that Legislature, defendants herein, to paragraph 4 of our Order of January 22, hereinabove set forth, and to Reynolds v. Sims, supra.

Accordingly, defendant William J. Scott's and the Intervening Defendants' "Motion to Reconsider and Vacate the Court's Order of January 22, 1965," is denied.

The motion of the remaining defendants represented by the Attorney General of the State of Illinois to have the court vacate paragraph "1" of its Order of January 22, 1965, is likewise denied.