933 F.2d 497
 19 Fed.R.Serv.3d 1437
 G. Mae DICKINSON, Netra McCully and Thomas J. Wilson, et
al., Plaintiffs-Appellants,
v.
INDIANA STATE ELECTION BOARD, Evan Bayh, in his official
capacity as Governor of the State of Indiana, and as an ex
officio member of the Indiana State Election Board, and Alan
K. Mills, et al., Defendants-Appellees.
 No. 90-2439.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 4, 1990.
Decided May 21, 1991.
 
 Richard J. Swanson, Segal & Macey, William R. Groth, Fillenwarth, Dennerline, Groth & Baird, Stephen Laudig, Indianapolis, Ind., for plaintiffs-appellants.
 Linley E. Pearson, Atty. Gen., David M. Wallman, Kimberlie A. Forgey, Deputy Attys. Gen., Robert S. Spear, Chief Counsel, Federal Litigation, Alan K. Mills, Barnes & Thornburg, William M. Evans, Bose, McKinney & Evans, Carolyn Ann Session, Gladys F. Willis, Indianapolis, Ind., for defendants-appellees.
 Before WOOD, Jr., and CUDAHY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 CUDAHY, Circuit Judge.
 
 
 1
 Plaintiffs sued under section two (as amended) of the Voting Rights Act, 42 U.S.C. Sec. 1973 (1988) (Section Two), for relief from an alleged violation stemming from the Indiana General Assembly's 1981 apportionment. The complaint, filed March 2, 1990, challenged Indiana House Districts 49 and 51 and requested both a declaratory judgment that the districts violated Section Two and an injunction to revise the procedure for the then-upcoming November 1990 election. Plaintiffs also proposed creation of a single-member district consisting of nineteen precincts from the two districts. The district court granted defendants' summary judgment motion on the grounds that the Indiana legislature was a necessary party but was not named by the plaintiffs and that laches and principles of equity barred injunctive and declaratory relief. 740 F.Supp. 1376. Appellants argue that the legislature was not a necessary party-defendant, that the district court erred in barring the action on the basis of laches and equity principles and that the district court could have granted declaratory relief even if injunctive relief was improper.
 
 I.
 
 2
 Indiana House Districts 49 and 51 are three-member districts from which representatives are elected on an at-large basis. District 49 lies to the north of an irregular boundary along 38th Street in Marion County, Indiana, and is 78% white, according to the 1980 census. District 51, lying south of the 38th Street boundary, is predominantly African-American (61.2%), again according to the 1980 count. The majority racial group in each district has consistently elected candidates of its choice to the House.
 
 
 3
 The plaintiffs claimed that the boundary between the two districts, through irregular deviations from 38th Street (a natural border between the two districts), packs African-American voters into District 51 and dilutes the votes of District 49 African-American voters north of 38th Street. Plaintiffs requested a declaratory judgment that Districts 49 and 51 violate Section Two[1] and a permanent injunction against additional elections in these districts as constituted. They also requested creation of a single-member district comprising the ten precincts in District 49 south of 38th Street and the nine precincts in District 51 north of 38th Street. They argued that the African-American members of these nineteen precincts are sufficiently numerous, geographically compact and politically cohesive to meet the requirements for a single-member district remedy. See Thornburg v. Gingles, 478 U.S. 30, 50-51, 106 S.Ct. 2752, 2766, 92 L.Ed.2d 25 (1986). According to the 1980 census, 50.27% of the new district's population would be African-American.
 
 
 4
 The alignment of the parties deserves mention. The original set of plaintiffs comprised eight African-Americans, residing and voting in Marion County, Indiana, one of whom (Dickinson) was a candidate for the House of Representatives from District 49. Originally, the defendants consisted of three groups. The first comprised five Democratic candidates running for the Indiana House of Representatives--William Crawford, Joseph Summers and John Day for District 51; Mary Moore and Craig Doyle for District 49. This group moved for, and received, permission to realign as plaintiffs. The second group--Paul Mannweiler, John Keeler and John Ruckelshaus III--consisted of Republican candidates for the Indiana House of Representatives in District 49 named as defendants pursuant to Fed.R.Civ.P. 19(a)(2) (Rule 19 Defendants). The third group--the Indiana State Election Board, responsible for administering elections in the state; Evan Bayh, governor of Indiana, in that capacity and as an ex officio member of the Election Board; and Alan Mills, Donald Cox and Robert Wright, as members of the Board--represented the state (State Defendants). In a real sense, only the Rule 19 Defendants are adverse to the plaintiffs in this action. They raised the defenses of equity and laches before the district court, whereas the State Defendants did not join the defense and have even supported the plaintiffs' cause. Order on Affirmative Defense (May 30, 1990) (Appellees' App. at 18).
 
 
 5
 On June 27, 1990, the district court granted defendants' motion for summary judgment. The court first held that because the plaintiffs had not included the state General Assembly as a defendant, the court lacked power to grant any requested relief. Judge McKinney noted that Article IV, section five of the Indiana Constitution provides the General Assembly with exclusive authority for reapportionment and that the Election Board performs only an administrative function. Inclusion of one or more legislative members as Rule 19 defendants was inadequate to confer jurisdiction over the legislature as a whole. Second, the court held that laches barred any relief because plaintiffs unjustifiably waited until 1990 to challenge an apportionment plan that had been in place since 1981. Finally, the court concluded that equitable principles weighed in favor of defendants. The then-upcoming November 6 election was near and the 1990 census was in progress, implying that the balance of hardships weighed against granting a remedy. In its discussion of equitable principles, the court also expressed concern about basing a proposed remedy on the "stale" 1980 census data because the proposed single member district enjoyed only a scant African-American majority (50.27%) of voting age citizens.
 
 II.
 
 6
 The parties dispute the appropriate standard of review. Plaintiffs claim that we should employ the traditional de novo summary judgment review, viewing the facts in the light most favorable to the nonmoving party. Defendants assert, citing Albemarle Paper Co. v. Moody, 422 U.S. 405, 424, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975), that a reviewing court examines a dismissal on account of laches under the clearly erroneous standard for facts and the abuse of discretion standard for locating " 'a just result' in light of the circumstances peculiar to the case...." Albemarle, however, does not divest our authority to review the legal issues surrounding laches. Its teaching is that laches sometimes requires factual findings not possible under summary judgment. Whether factual findings support a determination of prejudice sufficient to justify laches depends on the legal claim asserted. The Court in Albemarle, for example, explained the standard under Title VII for claims relating to a delayed backpay remedy.
 
 
 7
 Because the district court made the equitable findings on summary judgment, we view the record and inferences from facts disclosed in it in the light most favorable to the plaintiffs, Jeffries v. Chicago Transit Authority, 770 F.2d 676, 679 (7th Cir.1985), cert. denied, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986). The issues of law surrounding the necessary party determination and other legal issues we review de novo.
 
 III.
 A. Injunctive Relief
 1. General Assembly as Necessary Party
 
 8
 The district court reasoned that because the Indiana Constitution provides that the General Assembly has the power of apportionment, ordering the legislature to take remedial action would be an "extraordinary exercise of federal authority." Assuming the General Assembly were unwilling to adopt a remedy, the court felt that it would not have the equitable power to order the legislature to do so.[2]
 
 
 9
 This is a conclusion compelled neither by amended Section Two nor by the Federal Rules of Civil Procedure. Section Two's requirement that federal courts make an affirmative effort to remedy improperly formed districts does not require that the legislature be a party. The determination of whether a Section Two violation has occurred requires no determination of legislative intent, see McNeil v. Springfield Park District, 851 F.2d 937, 940-41 (7th Cir.1988), cert. denied, 490 U.S. 1031, 109 S.Ct. 1769, 104 L.Ed.2d 204 (1989), and the legislative presence is therefore not needed for determining a Section Two violation. In Smith v. Clinton, 687 F.Supp. 1310 (E.D.Ark.1988), a three-member district court rejected the suggestion that incumbent state legislators had to be joined as indispensable parties in a challenge to a multi-member district. The court found that the legislature's members' interests were represented and that they could intervene if they so desired. 687 F.Supp. at 1313. The federal court's remedial authority under Section Two neither depends on nor necessarily impedes the state legislature's duty to reapportion. There is nothing inherent in a court's determination of liability under Section Two that requires the legislature's presence, even if the legislature has constitutional authority for apportionment.[3]
 
 
 10
 In addition, if the court below believes lawmakers are essential to a just proceeding, the appropriate representative body could be joined when necessary under Rule 19, which governs joinder of parties needed for just adjudication. It provides that if joining a party is essential for complete relief and if the party has not been joined, "the court shall order that the person be made a party." If the court felt, considering the equities involved, that the legislature was necessary, the proper course would have been to require joinder under Rule 19.
 
 
 11
 Finally, if a violation of Section Two is found, the court can permit or even order the legislature to submit a proposed remedy. One option would be for the district court to permit the legislature to submit the first proposed plan to remedy a finding that Districts 49 and 51 violate Section Two.[4] Other courts have taken this route to secure the legislature's participation before selecting a remedy. See McDaniels v. Mehfoud, 702 F.Supp. 588, 596 (E.D.Va.1988) ("[I]n exercising its equitable powers, the Court should give the appropriate legislative body the first opportunity to provide a plan that remedies the violation.... If the affected legislative body fails to respond, or responds with a proposed remedy that itself constitutes a Sec. 2 violation, then the Court must fashion an appropriate plan." (citations omitted)); see also White v. Weiser, 412 U.S. 783, 794-95, 93 S.Ct. 2348, 2354, 37 L.Ed.2d 335 (1973) ("In fashioning a reapportionment plan or in choosing among plans, a district court should not pre-empt the legislative task nor intrude upon state policy any more than necessary."); McGhee v. Granville County, 860 F.2d 110, 115 (4th Cir.1988) (proper to give legislature first opportunity to devise remedy); Tallahassee Branch of NAACP v. Leon County, 827 F.2d 1436, 1438-40 (11th Cir.1987) ("Only when the state is unable or refuses to reapportion itself in accordance with federal law will a federal district court undertake reapportionment."), cert. denied, 488 U.S. 960, 109 S.Ct. 402, 102 L.Ed.2d 391 (1988).[5]
 
 
 12
 The court below cites Indiana ex rel. Welsh v. Marion Superior Court, 243 Ind. 307, 185 N.E.2d 18 (1962), for the proposition that a court should not enjoin a legislature to reapportion, given the political body's role under the Indiana Constitution. This pre-Section Two case involved a trial court's attempt to compel the Election Board--not the legislature--to conduct a reapportionment. It does not speak to whether the legislature can be enjoined to remedy a voting rights violation.
 
 
 13
 The district court also relies on principles of federalism in holding that the legislature should have the opportunity to remedy apportionment problems. But the supremacy clause ensures that the Voting Rights Act takes precedence over illegal state apportionments, and in light of the options available to accommodate the General Assembly's contribution, federalism provides no basis for dismissing the lawsuit.
 
 2. Laches and Equity
 
 14
 Because the issues of laches and equity are intermingled in this case, we consider them together. The district court assessed three issues: the reasons for plaintiffs' delay in bringing the suit, the prejudice from possible relief for the plaintiff and the upcoming 1990 census.
 
 
 15
 The court held that the plaintiffs' delay in bringing suit in 1990 for a reapportionment existing since 1980 was unjustified and would create severe prejudice. Laches requires that the district court find both inexcusable delay and resulting prejudice. Jeffries v. Chicago Transit Authority, 770 F.2d 676, 679 (7th Cir.1985). Judge McKinney found that "whether racial block voting actually exists in Districts 49 and 51 could have been determined many years ago. The plaintiffs have offered this Court nothing to justify its delay." Entry and Order at 22-23. He went on to find prejudice in that "substantial disruption of the election process would result no matter what remedy is selected." Id. at 32. "For the plaintiffs to suggest to this Court that such drastic action would create only a minimal inconvenience is to ignore reality." Id.
 
 
 16
 Although plaintiffs did wait until the eleventh hour to bring this suit, the delay may not have been inexcusable. We first note that Section Two's amendment in 1982 made a showing of impermissible vote dilution easier. Moreover, plaintiffs here base their claim on that section alone, not on constitutional principles, implying that the district court's reliance on pre-1982 cases or those dealing with constitutional challenges to apportionment schemes is less relevant.
 
 
 17
 We also reject the assertions of prejudice by the Rule 19 Defendants on behalf of the state. Rule 19 Defendants consist of candidates seeking office at the time of the lawsuit, who may have had reasons other than administration of the election in asserting prejudice. The State Defendants, including members of the Election Board, urged the court to hear the case on the merits. Reynolds v. Sims, 377 U.S. 533, 585, 84 S.Ct. 1362, 1393, 12 L.Ed.2d 506 (1964), does provide for withholding of relief in some instances because of delay. But the State Defendants protested the delay in Reynolds, and the challenge there was to an entire state apportionment plan, not to two districts. Rule 19 Defendants did submit an affidavit from the Marion County Clerk stating that confusion and additional costs would be imposed if a second primary election were required. This prejudice, even if credited, does not outweigh the plaintiffs' right to a hearing on the merits. The timing of the election cycle might well affect the remedy provided by the district court, but the clerk's affidavit, absent more compelling justification, is inadequate to establish the prejudice necessary for laches.
 
 
 18
 The district court also concluded that, on equitable grounds, the pending 1991 redistricting (based on the 1990 census) makes the entry of relief inappropriate. The district court did not err in making this finding. The legislative reapportionment is imminent, and Districts 49 and 51 may well be reshuffled. The legislature should now complete its duty, after which the plaintiffs can reassess whether racial bias still exists and seek appropriate relief. If the legislature does not redistrict even in the face of the Indiana Constitution's mandate to do so, as apparently happened from 1921 to 1963, plaintiffs can seek judicial relief. See Stout v. Hendricks, 228 F.Supp. 568, 571 (S.D.Ind.1964) (court unwilling to accept excessive delay by legislature). Reapportionment is one area where the judiciary, while retaining its authority to review legislative action, need not jump the gun in a reapportionment year.
 
 
 19
 Finally, the district court found that the proposed new district did not ensure African-American control, since the African-American population in the single-member district would contain only 50.27% of the population, by the 1980 census. "Whether the plaintiffs' proposed single-member district would have an African-American voting majority in 1990 is a matter of speculation." Order at 35. While the 1980 data may be old, they are the relevant data for assessing a claim under Section Two. McNeil v. Springfield Park District, 851 F.2d at 946. The plaintiffs' proposed single-member district appears, on the pleadings, to pass, but barely pass, the threshold requirements of Thornburg v. Gingles. The court below should have held further proceedings on this issue, which would have revealed more fully the facts surrounding the proposed district. The plaintiffs' showing was, however, entitled to survive summary judgment.
 
 
 20
 The need for a "supermajority" of minority voters in a proposed single-member district has been recognized in several cases. E.g., Ketchum v. Byrne, 740 F.2d 1398, 1416 (7th Cir.1984), cert. denied, 471 U.S. 1135, 105 S.Ct. 2673, 86 L.Ed.2d 692 (1985). We have cast doubt on such a requirement as a threshold, McNeil, 851 F.2d at 944, and the Supreme Court requires only a simple majority of eligible voters in the single-member district. Thornburg, 478 U.S. at 50-51, 106 S.Ct. at 2766. The court may consider, at the remedial stage, what type of remedy is possible based on the factors traditionally examined in single-member districts, such as minority voter registration and turn-out rates. McDaniels v. Mehfoud, 702 F.Supp. 588, 592-93 (E.D.Va.1988) (proposed remedy must demonstrate "reasonable opportunity" to elect minority representative). But this difficulty should not impede the judge at the liability stage of the proceedings.
 
 B. Declaratory Judgment
 
 21
 The district court denied declaratory relief on the same basis as its denial of equitable relief. The judge misconstrued the function of declaratory relief. A less intrusive remedy than an injunction, a declaratory judgment provides relief when legal or equitable remedies are too intrusive or are otherwise inappropriate. Steffel v. Thompson, 415 U.S. 452, 466-67, 94 S.Ct. 1209, 1219-20, 39 L.Ed.2d 505 (1974); Peterson v. Lindner, 765 F.2d 698, 703 (7th Cir.1985). In the context of this case, the district judge could have determined whether the plaintiffs are entitled to declaratory relief while at the same time denying an injunctive remedy on equitable grounds. Defendants cite Maryland Citizens for Representative General Assembly v. Governor of Maryland, 429 F.2d 606 (4th Cir.1970), where, in a dismissal of a request for injunctive relief in a reapportionment case, the court, denying declaratory relief, stated, "A declaratory judgment is not available as an academic exercise, and the coercive effect of one here would encounter all of the objections to injunctive relief." Id. at 611. But the plaintiffs' case presents more than academic exercise. A victory on the merits would provide an important statement of plaintiffs' rights and, assuming the legislature fails to act, could also provide the impetus for further action. Moreover, we do not see how declaratory relief would, in itself, be so coercive as equitable relief.
 
 
 22
 For these reasons, we REVERSE the holding below as to necessary parties and VACATE and REMAND with respect to equitable and declaratory relief.
 
 
 
 [1]
 The statute, amended in 1982, provides:
 (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection (b) of this section.
 (b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.
 42 U.S.C. Sec. 1973 (1988).
 
 
 [2]
 The district court states that the legislative body responsible for apportionment is frequently named in voting rights cases. Entry and Order at 8. The practice is common but not universal. Compare Smith v. Clinton, 687 F.Supp. 1361 (E.D.Ark.) (three judge court) (members of Board of Apportionment named), aff'd mem., 488 U.S. 988, 109 S.Ct. 548, 102 L.Ed.2d 576 (1988), and Jeffers v. Clinton, 730 F.Supp. 196 (E.D.Ark.1989) (same), and Thornburg v. Gingles, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986) (President of Senate, Speaker of House named), with Germano v. Kerner, 241 F.Supp. 715, 723 (N.D.Ill.1965) (no state legislator listed), vacated on other grounds sub nom., Scott v. Germano, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965)
 In some cases it is dffricult to tell from the caption in the reporter whether or not a legislative body has been named. Nonetheless, consistent with our discussion infra, the courts in cases without a named legislative representative could have joined an appropriate party had they believed that such a step were necessary.
 
 
 [3]
 A potential problem could arise if the court believed that the legislature's interests were not adequately represented, a finding that does not appear in the district court's order. However, in view of the options available to the judge discussed below, the proper course would not be to dismiss but to ensure that any unrepresented interests are properly represented through joinder
 
 
 [4]
 The district court appears to recognize this option:
 [E]ven if a violation of the Voting Rights Act were found, at the very least the General Assembly should be given the first opportunity to correct the deficiency through reapportionment. See Whitcomb v. Chavis, 307 F.Supp. 1362, 1366-67 (S.D.Ind.1969), rev'd on other grounds, 403 U.S. 124 [91 S.Ct. 1858, 29 L.Ed.2d 363] (1971) (court-ordered reapportionment plan instituted only after the legislature failed to act); Reynolds v. Sims, 377 U.S. 533, 586 [84 S.Ct. 1362, 12 L.Ed.2d 506] (1964) (district court should not engage in redrawing district lines until after court finds existing lines unlawful and the legislature refuses to act), Davis v. Bandemer [Bandemer v. Davis ] 603 F.Supp. 1479, 1496 (S.D.Ind.1984), rev'd on other grounds, 478 U.S. 109 [106 S.Ct. 2797, 92 L.Ed.2d 85] (1986) (district court declared the reapportionment unconstitutional but provided that the legislature should have an opportunity to reapportion before court took further action).
 Entry and Order at 9. In light of this option, it is difficult to understand why the court did not proceed.
 
 
 [5]
 Another district court provided a succinct statement of the procedure to be followed:
 [I]n exercising this broad equitable authority, a court must, whenever practicable, afford the jurisdiction an opportunity to remedy the violation first, ... with deference accorded the jurisdiction's plan if it provides a full, legally acceptable remedy.... But if the jurisdiction fails to remedy completely the violation or if its proposed remedial plan itself constitutes a Sec. 2 violation, the court must itself take measures to remedy the violation, but any court remedy must be narrowly tailored to include only those measures necessary to cure the effect.
 Dillard v. Baldwin County Bd. of Educ., 686 F.Supp. 1459, 1469 (M.D.Ala.1988), aff'd, Dillard v. Baldwin County Comm'n, 862 F.2d 878 (11th Cir.1988) (table).