G. Mae DICKINSON, Metra McCulley, Thomas J. Wilson, Marilyn Wilson, Everett N. Loeb, Jr., Frank Holt, Ralph E. Sadler, Barbara Hurst–Wells, and William A. Crawford, Plaintiffs,

v.

The INDIANA STATE ELECTION BOARD, Evan Bayh, in his official capacity as Governor of the State of Indiana, and as an ex officio member of the Indiana State Election Board, Alan K. Mills, Timothy S. Durham, and Robert H. Wright, all in their official capac-

ities as members of the Indiana State Election Board, and Paul S. Mannweiler, John S. Keeler, and John C. Ruckelshaus III, individually as officeholders in Indiana State Representatives District 49, Defendants.

No. IP 90–200–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 8, 1992.

740

Richard A. Waples, William R. Groth, Fillenwarth Dennerline Groth & Towe, Stephen Laudig, Laudig & George, Richard Swanson, Segal & Macey, Indianapolis, IN, for plaintiffs.

Alan Mills, Diane Cruz–Burke, Barnes & Thornburg, Gene R. Leeuw, Klineman Rose Wolf and Wallack, Indianapolis, IN, for defendants.

## ORDER ON PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

McKINNEY, District Judge.

The plaintiffs in this voting rights action have moved for the award of attorney's fees and costs incurred in connection with their pursuit of the case. All the defendants opposed this motion in timely fashion, and it stands ready for resolution. After extensive consideration, and for the reasons discussed below, the Court GRANTS the plaintiffs' motion, with modifications.

### I. BACKGROUND

The plaintiffs, who are registered voters from Marion County, Indiana, initiated this action on March 2, 1990, alleging that the alignment of Indiana House Districts 49 and 51 violated section 2 of the Voting Rights Act (the "Act"), 42 U.S.C. § 1973, as amended ("section 2"). Specifically, the plaintiffs claimed that these at-large, multi-member districts illegally diluted the voting strength of blacks living within them.[1] The plaintiffs sought three remedies, in addition to attorney's fees and costs: (1) a declaratory judgment that Districts 49 and 51 violated section 2, (2) a preliminary and permanent injunction against any further elections for representatives from these districts as then constituted, and (3) replacement of these districts with new, single-member districts.[2] The plaintiffs sued two distinct groups of defendants. The first group (collectively referred to as the "State defendants") consisted of the Indiana State Election Board, Governor Evan Bayh (in his official capacity and as an *ex officio* member of the Board), and Alan K. Mills, Donald B. Cox, and Robert H. Wright (in their official capacities as Board members). The second group (collectively referred to as the "Rule 19 defendants"[3]) included Paul S. Mannweiler, John S. Keeler, and John C. Ruckelshaus III, "as candidates for Indiana State Representative, District 49."[4]

On June 5, 1990, the Rule 19 defendants moved for summary judgment. The Court granted this motion on June 27, 1990, finding dismissal justified on two key grounds. First, the Court held that while it had power to grant declaratory judgment and to enjoin future elections, it had no authority to order reapportionment, because the only entity with power to realign state house districts— the Indiana General Assembly—was not a party to the suit. Because of this, and because it thought the General Assembly should have some input in the matter, the Court determined that enjoining the 1990 elections would be an improper exercise of judicial authority—even if it were to first find a section 2 violation. Accordingly, the Court found that any consideration of the plaintiffs' claim was improper, and it denied their request for relief in its entirety. *Dickinson v. Indiana State Election Bd.*, 740 F.Supp. 1376, 1380–82 (S.D.Ind.1990).

The Court also held that the plaintiffs' suit was barred by laches and equity.[5] First, the

---

1. At-large, multi-member districts regularly have been found to violate section 2. *See, e.g., Citizens for a Better Gretna v. City of Gretna*, 834 F.2d 496 (5th Cir.1987), *cert. denied*, 492 U.S. 905, 109 S.Ct. 3213, 106 L.Ed.2d 564 (1989).

2. The first and second remedies were sought expressly in the complaint. The plaintiffs' desire for the third remedy became clear as the case progressed. *Dickinson v. Indiana State Election Bd.*, 740 F.Supp. 1376, 1380 (S.D.Ind.1990).

3. The Rule 19 defendants are so called because they were joined pursuant to Rule 19(a)(2) of the Federal Rules of Civil Procedure, which states in pertinent part:
 A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... the person claims an interest relating to

the subject of the action and is so situated that the disposition of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect that interest....

4. The complaint originally named several other defendants, but these realigned as plaintiffs pursuant to this Court's order of April 27, 1990.

5. The Rule 19 defendants advanced these grounds after they were raised by the Court *sue sponte* earlier in the case. *See* Order on Hearing, April 17, 1990. The State defendants had no desire to raise a laches defense, and wanted the Court to determine the plaintiffs' case on the merits. *See* Order on Affirmative Defenses, May 30, 1990, at 1.

Court held that the plaintiffs had no good reason for waiting until 1990 to challenge an apportionment scheme enacted in 1981. The Court then determined that granting the plaintiffs' requested relief would result in prejudice by causing a "substantial disruption" of the 1990 election. Invalidation of the districting scheme would have required both the vacating of primary results, and either a special primary or party caucus to slate new candidates, so the Court felt that "the potential for voter confusion and assorted problems" was too great. Finally, the Court thought it unwise to proceed to the merits of the plaintiffs' case when the General Assembly by law would shortly be reapportioning the challenged districts anyway, and thereby might cure any section 2 violation. *Id.* at 1386–91.

On appeal, the Seventh Circuit reversed and remanded. First, the court of appeals held that the General Assembly's absence did not prevent this Court from deciding whether a section 2 violation existed. Though not concluding that the General Assembly should *not* be a party to the suit, the court of appeals made clear that this Court should go ahead and decide if there was a section 2 violation, and then, if there was, worry about whether or not to join the General Assembly. *Dickinson v. Indiana State Election Bd.*, 933 F.2d 497, 500–02 (7th Cir.1991). In essence, this holding mandated a trial of two parts—a liability stage (for determination of whether section 2 had been violated, and the entry of declaratory relief) and a remedial stage (during which available options could be considered). *Id.* at 503. Second, the court of appeals disagreed with this Court's holding on laches and equity. It held that the plaintiffs' delay in bringing suit "may not have been inexcusable," and that any prejudice resulting from a disruption of elections did "not outweigh the plaintiffs' right to a hearing on the merits." *Id.*

The court of appeals did agree with this Court's decision on one point, holding that on equitable grounds, "the entry of relief"—presumably, injunctive relief—was "inappropriate" because redistricting by the General Assembly was imminent. The court said that the Assembly should have a chance to "complete its duty" in this area before intervention by this Court. *Id.* at 502–03.

On June 14, 1991, shortly after this decision, the plaintiffs filed an amended complaint, realleging their original claims and adding a request for invalidation of the results for the fall 1990 elections in Districts 49 and 51. The complaint also changed the designation of the Rule 19 defendants, who had since been elected, and renamed them "individually as officeholders" in District 49. At about this same time, the General Assembly enacted legislation that replaced Districts 49 and 51 with several new single-member districts. This realignment cured the alleged section 2 violation at the core of the plaintiffs' complaint, and prompted the parties to enter a stipulation "for purposes of resolving the action." The stipulation, which was approved by the Court on October 8, 1991, admitted of no section 2 violation or Voting Rights Act liability on the part of any party. Instead, it stated simply as follows:

4. The Indiana General Assembly in 1991 passed and Governor Bayh signed a new districting plan for the Indiana House of Representatives, which eliminates all multi-member districts and the alleged violation of the Voting Rights Act.

5. Plaintiffs' lawsuit was a significant catalytic factor in achieving the primary relief sought through this litigation despite failure to obtain formal judicial relief.

Stipulation (Oct. 8, 1992) at 2–3. The stipulation also made clear that the plaintiffs could seek any available attorney's fees and costs pursuant to 42 U.S.C. § 1988, if they could not reach agreement on payment with the State defendants; it made no mention of any potential fees or costs liability on part of the Rule 19 defendants. *Id.* at 3.

■ The plaintiffs formally moved for attorney's fees and costs on October 31, 1991. They asked for $117,496 in attorney's fees—$73,840.00 for William R. Groth (461.50 hours @ $160 per hour), $33,560.00 for Stephen Laudig (209.75 hours @ $160 per hour), and $10,096.00 for Richard Swanson (63.10 hours

@ $160 per hour).[6] They also asked for $1813.64 in costs—$412.69 for Groth,[7] $954.62 for Laudig, and $446.33 for Swanson.[8] The State defendants responded on January 29, 1992, and the plaintiffs replied on February 13, 1992. The Rule 19 defendants filed an *"Amicus Curiae* Brief" on attorney's fees and costs on February 13, 1992. The plaintiffs responded to this pleading, and the Rule 19 defendants replied on February 26, 1992.

## II. *DISCUSSION*

### A. *General standards*

■ In deciding whether to award attorney's fees and costs in a voting rights case, a court first must determine whether the plaintiff meets the "statutory threshold" of being a "prevailing party" in the litigation, because only such parties may be awarded fees and costs. 42 U.S.C. §§ 1973*l* (e), 1988; *Texas State Teachers' Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789, 109 S.Ct. 1486, 1491, 103 L.Ed.2d 866 (1989).[9] A prevailing party is one who succeeded "on any significant issue in the litigation which achieve[d] some of the benefit the part[y] sought in bringing suit," *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), and achieved some change in the par-

ties' relationship as a result of the suit. *Garland*, 489 U.S. at 792–93, 109 S.Ct. at 1493.

■ Next, the court must decide what award is appropriate. If the case involves one claim and one adverse party, the computation is rather simple; where several claims were involved, however, and the plaintiff did not achieve "complete success" on all of them, it becomes more complicated. If the claims involved common facts or related theories, the court has substantial discretion in formulating an award. It may eliminate specific hours devoted by the plaintiff's attorney(s) to the case, alter the award to account for degree of success, or combine these approaches. *Garland*, 489 U.S. at 790, 109 S.Ct. at 1492. If the claims involved different facts or theories, the court is more limited, and should award fees and costs only for those claims upon which the plaintiff succeeded. *Garland*, 489 U.S. at 789, 109 S.Ct. at 1491; *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

■ Finally, if the case involved more than one adverse party, the court should apportion payment liability among those responsible. While numerous apportionment methods exist, a court must take care to act equitably in choosing and applying one.

---

**6.** These totals differ slightly from those in the plaintiffs' motion due to apparent mathematical errors.

**7.** The plaintiffs originally requested $1940.96 in expenses for Groth, *see* Affidavit of William Groth, App. at 9–11, but conceded in their reply brief that $1789.33 of this amount is not recoverable. However, they also have requested an additional $261.06 for hotel and mileage costs incurred during Groth's trip to Chicago for argument on appeal.

**8.** The plaintiffs moved on January 2, 1992 for an additional $31,116.75 in expert fees paid to Dr. Gordon G. Henderson. In their original petition, the plaintiffs recognized that expert fees were unrecoverable under § 1988 per *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). They now argue that the Civil Rights Act of 1991, which amended § 1988 to allow recovery of expert fees, applies retroactively to this case. This claim fails in light of *Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225 (7th Cir.1992) and *Mozee v. American Commercial Marine Service*, 963 F.2d 929 (7th Cir.), *cert. denied*, — U.S. —, 113

S.Ct. 207, 121 L.Ed.2d 148 (1992), in which the Seventh Circuit held that the Act does not apply retroactively. *Casey* therefore governs, and prohibits any award of expert fees in this case.

**9.** Both § 1973*l*(e) and § 1988 apply in voting rights cases—§ 1973*l*(e) as the express Act provision, and § 1988 through its general applicability to civil rights cases. The Supreme Court has recognized the statutes' common theme, and applies the same standard of interpretation to "all cases in which Congress has authorized an award of fees to a 'prevailing party,'" whichever statute is invoked. *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983); *see also Independent Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 758–59 n. 2, 109 S.Ct. 2732, 2735 n. 2, 105 L.Ed.2d 639 (1989). Thus, there is no question that § 1988 and § 1973*l*(e) are to be "construed consistently." *Leroy v. City of Houston*, 831 F.2d 576, 579 n. 4 (5th Cir.1987), *cert. denied*, 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988); *Conner v. Winter*, 519 F.Supp. 1337, 1339 (S.D.Miss. 1982) (three-judge court). Most fee-shifting cases have dealt with § 1988, so the Court for sake of convenience will refer to that statute, rather than § 1973*l*(e).

*Nash v. Chandler,* 848 F.2d 567, 573–74 (5th Cir.1988); *see Grendel's Den v. Larkin,* 749 F.2d 945, 960 (1st Cir.1984).

### B. *Prevailing Parties Threshold*

 The plaintiffs here easily qualify as "prevailing parties." The stipulation resolved the dispute, altered the plaintiffs' legal relationship with the defendants, and demonstrated that the action had been "significant catalytic factor" (and a causative link) in the General Assembly's decision to reapportion. Stipulation (Oct. 8, 1991) at 2; *cf. Rivera v. Dyett,* 762 F.Supp. 1109, 1115 (S.D.N.Y.1991) (stipulation that gave plaintiff what he would have gotten anyway did not make him prevailing party). It does not matter that the stipulation resulted from settlement, *see Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980); *Nanetti v. University of Illinois at Chicago,* 867 F.2d 990, 992 (7th Cir.1989), contained no outright admission of wrongdoing, *see Lovell v. City of Kankakee,* 783 F.2d 95, 96–97 (7th Cir. 1986), or gave the plaintiffs less than all they requested. *Larsen v. Sielaff,* 702 F.2d 116, 117 (7th Cir.), *cert. denied,* 464 U.S. 956, 104 S.Ct. 372, 78 L.Ed.2d 330 (1983); *see Nanetti,* 867 F.2d at 992–93.[10] The plaintiffs are prevailing parties, and as a result should "'recover an attorney's fee [and costs] unless special circumstances would render such an award unjust.'" S.Rep. No. 1011, 94th Cong., 2d Sess. 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5909–10 (quoting *Newman v. Piggie Park Enters.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)); *Doe v. Busbee,* 684 F.2d 1375, 1378

(11th Cir.1982); *see also Garland,* 489 U.S. at 792–93, 109 S.Ct. at 1493–94.

### C. *Appropriate Award*

#### 1. *Attorney's Fees*

 The calculation of an attorney's fee award involves four general steps: (1) establishment of a reasonable hourly rate; (2) tabulation of attorney hours reasonably expended on the case; (3) multiplication of these two numbers to reach a "lodestar" figure; and (4) reduction of this amount (where appropriate) to account for limited success. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 3097–98, 92 L.Ed.2d 439 (1986) ("*Delaware Valley I* "); *Blum v. Stenson,* 465 U.S. 886, 888, 897, 104 S.Ct. 1541, 1544, 1548, 79 L.Ed.2d 891 (1984); *see also Gekas v. Attorney Registration & Disciplinary Comm'n,* 793 F.2d 846, 852 (7th Cir. 1986).[11]

#### a. **Hourly Rate**

 Hourly rates for attorney's fees will vary from case to case, but wherever set, they must reflect "the prevailing market rates in the relevant community." *Blum,* 465 U.S. at 895, 104 S.Ct. at 1547. Factors in setting the rate include risk of loss due to novelty or complexity, skill of counsel, and quality of representation. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 726–27, 107 S.Ct. 3078, 3087, 97 L.Ed.2d 585 (1987) ("*Delaware Valley II* ") (plurality opinion); *see Id.* at 731, 107 S.Ct. at 3089–90 (O'Connor, J., concurring).[12] Not surprisingly,

---

10. The Rule 19 defendants contend that the stipulation did not resolve all issues, but this claim is belied by the stipulation's language. *See O'Connor v. City and County of Denver,* 894 F.2d 1210, 1226 n. 12 (10th Cir.1990) (effect of stipulation a matter for court's decision). The parties agreed to the stipulation *"for purposes of resolving this action,"* Stipulation (Oct. 8, 1991) at 2 (emphasis added), and reserved no claims except for attorney's fees and costs. This indicates an intent to resolve all other matters. *See Young v. Powell,* 729 F.2d 563, 566 (8th Cir.1984).

11. Until recently, it also would have been appropriate to determine if any enhancement for contingency was warranted. In fact, the plaintiffs asked for an enhancement of $77,547.36, or

66%. However, in light of *City of Burlington v. Dague,* —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), which held that contingency enhancement is not available under federal fee-shifting statutes, *see id.* at ——, 112 S.Ct. at 2641, the Court summarily denies this request.

12. Rule 1.5(a) of the Model Rules of Professional Conduct also provides guidance in setting the rate. *See Murphy v. Kolovitz,* 635 F.2d 662, 664 (7th Cir.1981); *Muscare v. Quinn,* 614 F.2d 577, 579 (7th Cir.1980). Elements to be considered include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11.

 The plaintiffs have requested $160 per hour for each of their attorneys. They admit that "[t]here is no local record of customary fees for plaintiffs' counsel in Voting Rights Act litigation," Plaintiffs' Supporting Brief at 12, but in lieu of such a record rely on three items: (1) the case of *Jeffers v. Clinton,* 776 F.Supp. 465 (E.D.Ark.1991), *vacated and remanded for redirection of appeal,* —— U.S. ——, 112 S.Ct. 1462–63, 117 L.Ed.2d 609 (1992), which approved a rate of $175 per hour in a Voting Rights Act case; [13] (2) an Indianapolis newspaper article dated August 29, 1990 that reported the State's agreement to pay the Rule 19 defendants' legal fees of $39,662 (which by the plaintiffs' calculations equalled $181 per hour); and (3) the affidavit of Indianapolis attorney Gary P.

Price, who states that $160 is a reasonable hourly rate.

The first two items are not conclusive. In *Jeffers,* the "relevant community" from which an hourly rate was derived was Little Rock, Arkansas; Indianapolis is the market that matters here. *See Jeffers,* 776 F.Supp. at 469. In addition, the cited newspaper article gives no evidence of the hourly rate paid to the Rule 19 defendants' counsel; it provides only the total amount.[14] Still, $160 per hour is justified in this case. First, Price indicates that the rate is equivalent to those charged by other Indianapolis attorneys of comparable skill, experience, and reputation. Affidavit of Gary P. Price, ¶ 7 (attached as Exhibit "E" to Plaintiffs' Reply Brief) [hereinafter "Price Aff."].[15] Price's affidavit has weaknesses, as discussed *infra,* but its conclusions regarding the rate are sound. Second, the plaintiffs faced a substantial risk of losing this case, which presented difficult issues and could have been quite lengthy. *See Delaware Valley II,* 483 U.S. at 726–27, 107 S.Ct. at 3087 (plurality opinion), 731 (O'Connor, J., concurring).[16]

 The State defendants contend that attorneys Laudig and Swanson should receive less per hour than Groth because they had less responsibility. It is true that

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

13. The judgment in *Jeffers* apparently was reinstated without change on April 7, 1992. *See Jeffers v. Clinton,* 796 F.Supp. 1202, 1203 (E.D.Ark.1992).

14. Even if defense counsel did receive $181 per hour, this by itself would not make the plaintiffs' request reasonable. *See Pennsylvania v. O'Neill,* 431 F.Supp. 700, 703–03 n. 4 (E.D.Pa.1977), *aff'd,* 573 F.2d 1301 (3d Cir.1978).

15. The plaintiffs tendered Price's affidavit with their reply brief, rather than their original motion, so the State defendants have been unable to challenge Price's conclusions formally. *See* State Defendants' Response Brief at 20 n. 4. The Court nevertheless will consider the affidavit, because the State defendants capably challenged the $160 rate in their response brief, and because the affidavit provides but one factor for consideration. A more important factor is the Court's familiarity with relevant rates in Indianapolis. *See Hutchison v. Wells,* 719 F.Supp. 1435, 1446 (S.D.Ind.1989) (Barker, J.) (court adjusted award in light of its familiarity with market); *see also Loewen v. Turnipseed,* 505 F.Supp. 512, 515 (N.D.Miss.1981) (court relied on knowledge of local conditions to set rate where no independent affidavits were filed with original petition).

16. Judge Barker of this district recently awarded a similar rate in another voting case involving attorney Laudig. *See Libertarian Party of Indiana v. Marion County Board of Voter Registration,* No. IP 90–2240–C (S.D.Ind. July 22, 1992).

where responsibility levels differ, rates can (and sometimes should) differ. *See Central Delaware Branch, NAACP v. City of Dover,* 123 F.R.D. 85, 90 n. 8 (D.Del.1988). Where responsibility differs in quantity rather than quality, however, compensation will be adequately adjusted in the number of hours allowed. Here, each of the plaintiffs' attorneys carried substantial responsibility, despite devoting different amounts of time to the case. No rate reduction is necessary.

 The State defendants also assert that time "in-court" and "out-of-court" should be compensated at different rates. Such differential billing rates are permitted, *see Bonner v. Coughlin,* 657 F.2d 931, 937 (7th Cir. 1981), but they are not mandatory. The Seventh Circuit has approved use of a flat rate, set at something less than the maximum available in-court charge, for all hours expended. *Id.* Such a rate is appropriate here, given the suit's scheduling, frequent hearings, and intensive briefing requirements.

### b. Hours Reasonably Expended

 The party seeking fees bears the burden of establishing the number of hours reasonably expended on a case. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. On one hand, this burden is "heavy," *Chrapliwy v. Uniroyal, Inc.,* 583 F.Supp. 40, 46 (N.D.Ind. 1983), and failure to present sufficient records can result in a reduction of the hours requested. *Hensley,* 461 U.S. at 441, 103 S.Ct. at 1943 (Burger, C.J., concurring); *Blum,* 465 U.S. at 892 n. 5, 104 S.Ct. at 1545 n. 5. On the other hand, "rigorous" detail is not required so long as the documentation, taken in context, sufficiently identifies what work was done. *See Gekas,* 793 F.2d at 852; *Berberena v. Coler,* 753 F.2d 629, 634 (7th Cir.1985); *see also Hensley,* 461 U.S. at 436–37 n. 12, 103 S.Ct. at 1941 n. 12. Whatever amount is claimed, an applicant must exercise "billing judgment"—that is, eliminate excessive or redundant hours. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940; *Tomazzoli v. Sheedy,* 804 F.2d 93, 96 (7th Cir.1986).

### (1) General Challenges

 The State defendants launch two general challenges to the plaintiffs' aggregate claim of 734.35 attorney hours. First, they claim that the use of three attorneys was excessive, as exemplified by the time the attorneys spent in conference with one another or third parties—97.7 hours. This challenge is not well-taken. A single attorney might have been able to handle this case, but multiple counsel (and the time they spent in conference) clearly were justified. This action moved on an expedited schedule, and the plaintiffs were often forced to respond rapidly (yet thoroughly) due to actions by the defendants and the Court. The use of more than one attorney therefore represented an effective division of labor, and, where conferences are concerned, an attempt to accomplish tasks more quickly. All in all,

> [i]t does not seem unreasonable to this court for a law firm, litigating a case of [such] import in and from the district court to the court of appeals ..., to use two or three attorneys at one time and to spend a considerable number of hours in coordinating efforts and planning strategy. Indeed, time well spent in conference can prevent the unnecessary duplication of effort sometimes caused by poor communication.

*American Booksellers Ass'n v. Hudnut,* 650 F.Supp. 324, 329 (S.D.Ind.1986) (Barker, J.).

 Second, the State defendants claim that billing entries which list several activities, without making clear which ones pertain to this case, should be excluded from any fee award—even if some of the activities would be compensable if listed separately. *See* State Defendants' Opposing Brief at 28 n. 8. They rely on *Hutchison v. Wells,* 719 F.Supp. 1435, 1441 (S.D.Ind.1989), in which Judge Barker used such an approach, but this reliance is misplaced. In *Hutchison* the entries apparently were not decipherable without "awkward" or time-consuming mathematics. *See Hutchison,* 719 F.Supp. at 1441 n. 9. Here, Groth's, Laudig's, and Swanson's entries are detailed enough to parse—and pare—without undue strain.

## (2) Specific Tabulations and Challenges

Specific challenges to the plaintiffs' request for attorney's fees (and for expenses, as discussed below) are more easily considered if the case is examined in phases, of which four are readily apparent. Phase I (the "preliminary period") ran from the filing of the complaint through March 28, 1990. Phase II (the "litigation period") began on March 29, 1990 (the date of the Rule 19 defendants' motion to strike) and ran through June 27, 1990 (when summary judgment was granted). Phase III (the "appeal period") lasted from June 28, 1990 through May 21, 1991 (the date of the Seventh Circuit's opinion). Finally, phase IV (the "remand period") ran from May 22, 1991 through October 8, 1991 (the date the parties' stipulation was approved).

### (a) Phase I

The plaintiffs have claimed 140.55 attorney hours for the preliminary period—80.9 for Groth, 57.8 for Laudig, and 1.85 for Swanson—and the State defendants challenge several parts of this request. First, they claim that 34.5 hours spent by Groth and Laudig to prepare the "simple 8½ page complaint" is excessive. The Court disagrees. Given the nature of the suit, taking the equivalent of four work days to draft and revise the complaint does not seem unreasonable. The State defendants also challenge 41.75 hours spent on the plaintiffs' preliminary injunction motion, claiming that it was unnecessary because an injunction was requested in the complaint, and because the motion was withdrawn before any ruling on it was issued. *Id.* at 27. The Court again disagrees. The motion raised important issues and did not lose value just because it was later withdrawn.

The State defendants' next argument—that certain activities listed in Groth's billing statement for phase I, such as filing and delivering documents, are clerical and therefore not to be compensable at $160 per hour—has merit. *See Bovey v. City of Lafayette,* 638 F.Supp. 640, 645–46 (N.D.Ind. 1986); *see also Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 2471–72 n. 10, 105 L.Ed.2d 229 (1989). The Court has examined the challenged activities, *see* State Defendants' Opposing Brief at 31–33, and finds that 2.34 hours of Groth's phase I total were spent performing clerical tasks.[17] This time will be compensated at $40 per hour, which is reasonable given the type of services at issue. *See generally Collins v. Martinez,* 751 F.Supp. 16, 18 (D.Puerto Rico 1990).

Finally in phase I, the State defendants challenge the time the plaintiffs' attorneys spent talking with one another on the telephone—5.2 hours for Groth, 5.5 hours for Laudig, and 0.10 hours for Swanson. The Court, however, finds these amounts to be reasonable.

### (b) Phase II

With regard to the plaintiffs' request for 355 litigation period hours—196.7 for Groth, 98.5 for Laudig, and 59.8 for Swanson—the State defendants first argue that 34 to 43 hours reportedly spent by Groth and Laudig in preparing the plaintiffs' response to the Rule 19 defendants' motion to strike or dismiss is excessive.[18] It is not, given the motion's role, timing, and focus on a potentially lethal defense.

The State defendants also challenge the time Laudig and Swanson devoted to opposing the Rule 19 defendants' efforts on laches and equity issues.[19] Laudig's report of 3.5 hours spent at hearings is challenged on the ground that Laudig did not speak, and therefore did not participate, in those pro-

---

**17.** This total includes Groth's entire entry for March 14, 1990 (one hour for filing and delivering response), and forty minutes (.67 hours) each from his March 2, 1990 and March 19, 1990 entries (filing documents). The latter deduction is computed, as are others discussed *infra,* by allowing thirty minutes for a round trip from Groth's office to downtown Indianapolis, *see* Plaintiffs' Reply Brief at 14, plus ten minutes to conduct business once there.

**18.** The amount of time spent by Swanson—21.0 hours—has not been directly challenged.

**19.** Groth's submission of 44.7 hours is unchallenged, except for a duplicative entry of one hour (June 12, 1990) that will be disallowed.

ceedings. Laudig may not have spoken, but this does not mean that he did not "participate"; his presence, and supporting role, were justified.[20] Swanson's submission of 7.8 hours is challenged as duplicative "in light of his minor role" in the laches and equity part of the case. State Defendants' Opposing Brief at 38. The Court partially agrees with this contention, and will deduct 2.8 hours from Swanson's total.[21]

Several "clerical duty" reductions to Groth's and Swanson's reported time also are warranted for phase II. Accordingly, 5.44 hours of Groth's time [22] and one-half hour of Swanson's time [23] will be compensated at $40 per hour, rather than $160 per hour. Finally, one telephone call—Laudig's call of March 30, 1990, for two-tenths of an hour—is improperly documented, and must be disallowed.

### (c) Phase III

 The plaintiffs seek reimbursement for 164.7 attorney hours during the appeal period—140.4 hours by Groth, 22.8 by Laudig, and 1.5 by Swanson.[24] Laudig's and Swanson's portions of this time are reasonable and adequately documented, so their claims will be allowed in full. Groth's claimed amount is also reasonable and adequately documented; however, 2.84 hours Groth spent on clerical activity during this phase will be compensated at $40 per hour, rather than $160.[25]

### (d) Phase IV

For the remand period, the plaintiffs seek compensation for 74.15 attorney hours—43.5 for Groth and 30.65 for Laudig—and only minor amounts, relating to clerical duties and telephone calls, have been challenged. With regard to the former, 1.17 hours of Groth's reported time [26] and 0.5 hours of

**20.** *Ramos v. Lamm,* 713 F.2d 546 (10th Cir. 1983), in which the plaintiffs were required to justify the participation of each attorney present, does not affect this conclusion. In that case, the plaintiffs asked for fees attributable to new attorneys and law clerks who were present purely as a part of their training. *See id.* at 554 n. 4. Here, Laudig played a substantial role in the case; he certainly was no trainee.

**21.** This amount includes one hour for April 23, 1990 (preparation and attendance), 0.5 hours for June 5, 1990 (review and analysis of brief), 0.2 hours for June 12, 1990 (review of opposing brief), 0.1 hours for June 13, 1990 (review of response by State defendants), and one hour for June 18, 1990 (review of oral argument).

**22.** The specific reductions are as follows: 0.5 hours for April 12, 1990 (deliver stipulation); 0.67 hours for April 23, 1990 (drop off pleadings); 1.1 hours for May 9, 1990 (check cites, copy, file, deliver); 0.5 hours for June 1, 1990 (copy article); 1.0 hour for June 7, 1990 (file and deliver brief); 1.0 hour for June 12, 1990 (deliver and pick up pleadings); and 0.67 hours for June 14, 1990 (pick up exhibits).

**23.** This reduction is for June 1, 1990 (filing witness and exhibit lists).

**24.** An interesting argument has been made against the award of attorney's fees for the plaintiffs' appeal. Under § 1988, fees are awarded "as part of the costs," and in this case the Seventh Circuit ordered each party to bear its own costs for the appeal. *See* Judgment (May 21, 1991) (attached as Exhibit B to State Defendants' Opposing Brief). Because the plaintiffs were not awarded costs on appeal, the argument

goes, they cannot be awarded attorney's fees "as part of the costs" for that appeal.

This argument focuses on the breadth of the term "costs" as used in Fed.R.App.P. 39(a), which governs the award of costs for appeal, and which has not been dealt with recently by the Seventh Circuit except in dicta. *See Ekanem v. Health & Hosp. Corp. of Marion County,* 778 F.2d 1254, 1256–57 n. 3 (7th Cir.1985). The Sixth Circuit, however, has held that an award of costs under Rule 39(a) is "totally unrelated to an award of attorney's fees pursuant to the directions of § 1988." *Kelley v. Metropolitan County Bd. of Educ.,* 773 F.2d 677, 681–82 (6th Cir.1985), *cert. denied,* 474 U.S. 1083, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986).

*Kelley* and other cases demonstrate that Rule 39 deals only with the "usual costs" of appeal, such as those expressly listed in 28 U.S.C. § 1920. *See Robinson v. Kimbrough,* 652 F.2d 458, 463 & n. 7 (5th Cir.1981); Fed.R.App.P. 39(a) advisory committee note (1967 adoption). As a result, it seems clear that an award of costs under Rule 39(a) is not a prerequisite to the receipt of attorney's fees for an appeal under § 1988. At least one district court in the Seventh Circuit has followed *Kelley* on this point, *see Littlefield v. Mack,* 134 F.R.D. 234, 235 (N.D.Ill. 1991), and this Court will do the same.

**25.** The specific reductions are 2.17 hours for July 3, 1990 (filing document designation and delivering pleadings to court), and 0.67 hours for August 13, 1990 (filing appeal with court).

**26.** These reductions are 0.67 hours on June 14, 1991 (time for trip to sign amended complaint) and 0.5 hours on October 2, 1991 (for time spent to file stipulation and return to office).

Laudig's[27] will be compensated at $40 per hour. The full amount of time claimed for telephone calls in this period, however, is reasonable.

### c. Lodestar

Based upon 724.55 hours compensated at $160 per hour, and 12.29 hours at $40 per hour, the plaintiffs' lodestar for the entire case is $116,419.60. For phase I, the amount is $22,207.20: $12,663.20 for Groth (78.56 hours @ $160 each and 2.34 hours @ $40 each), $9248.00 for Laudig (57.8 hours @ $160 each), and $296.00 for Swanson (1.85 hours @ $160 each). For phase II, the amount is $56,477.60: $31,689.60 for Groth (196.7 hours @ $160 each, and 5.44 hours @ $40 each), $15,728.00 for Laudig (98.3 hours @ $160 each), and $9060.00 for Swanson (56.5 hours @ $160 each, and 0.5 hours @ $40 each). For phase III, the amount is $26,011.20: $22,123.20 for Groth (137.56 hours @ $160 each, and 2.84 hours @ $40 each), $3648.00 for Laudig (22.8 hours @ $160 each), and $240.00 for Swanson (1.5 hours @ $160 each). For phase IV, the amount is $11,723.60: $6819.60 for Groth (42.33 hours @ $160 each, and 1.17 hours @ $40 each), and $4904.00 for Laudig (30.65 hours @ $160 each).

### d. Reductions

■ Determination of the lodestar does not end the fee computation process. The Court next must decide whether any circumstance—in particular, the plaintiffs' lack of complete success—warrants a downward adjustment. *Hensley*, 461 U.S. at 434–37, 103 S.Ct. at 1940–41. Although there is a strong presumption that the lodestar represents the reasonable fee in a given case, *see City of Burlington v. Dague*, —— U.S. ——, ——, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992), a court nevertheless has discretion to reduce it in two situations. The first is where a plaintiff has failed to prevail on a claim that is "distinct in all respects" from the plaintiff's successful claims. *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943; *Nanetti v. University of Illinois at Chicago*, 944 F.2d

1416, 1420 (7th Cir.1991); *see Grant v. Martinez*, 973 F.2d 96, 100 (2d Cir.1992) (successful and unsuccessful claims must be "wholly unrelated"). The second occurs where the claims are interrelated (or as the Second Circuit has put it, are "based on a common core of facts," *Grant*, 973 F.2d at 100), but the plaintiff has achieved only "partial or limited success" on them. *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941; *Nanetti*, 944 F.2d at 1420.

■ The first option clearly does not apply here, and the second one, although potentially applicable—because the plaintiffs sought three interrelated remedies based on the same core of facts (declaratory judgment, reapportionment, and injunction) and effectively got only the first two[28]—is not appropriate. True, the plaintiffs failed to get an injunction, but their arguments on the issue were heavily interrelated with those for a declaratory judgment and reapportionment, and injunctive relief arguably was the least important of the remedies sought. As a result, no reduction is warranted. The plaintiffs obtained "excellent results," *see Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940, and are entitled to the full lodestar amount.

### 2. *Expenses*

### a. General Standards

■ In addition to attorney's fees, a prevailing party can recoup costs of the litigation that are (1) recoverable under statute or rule, (2) reasonable in amount, and (3) necessary to the litigation. *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 430 (7th Cir.1989). A cost may be "recoverable" under Rule 54(c) of the Federal Rules of Civil Procedure, which allows the recovery of certain payments made to persons other than the attorney on the case. These costs are limited to items listed in 28 U.S.C. § 1920:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

---

**27.** This reduction is for June 14, 1991 (filing of amended complaint).

**28.** One could argue that the plaintiffs did not technically obtain a declaratory judgment. How-

ever, the court of appeals held that they had the right to seek one, *Dickinson*, 933 F.2d at 503, and they were doing this when the parties entered their stipulation.

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under [28 U.S.C. § 1923];

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

*See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441–42, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987). If a § 1920 cost is incurred on appeal, its award must be consistent with any costs ruling issued by the appellate court. *See Kemp v. Heckler,* 777 F.2d 414, 414–15 (8th Cir.1985) (per curiam).

■■■ Alternatively, a cost may be recoverable as one of the out-of-pocket costs attorneys traditionally incur in furnishing effective representation. *Northcross v. Board of Educ. of Memphis City Schools,* 611 F.2d 624, 639 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980). Such expenses include postage, long-distance telephone calls, photocopying, travel, and paralegal fees, *Heiar v. Crawford County,* 746 F.2d 1190, 1203 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985),[29] and are allowed as part of a "reasonable attorney's fee" under § 1988, even though they are listed separately from the hourly rate.[30]

■■■ Whether an expense is either reasonable or necessary to the litigation is a fact-sensitive, discretionary inquiry. *Weihaupt,* 874 F.2d at 430. The trial court must specifically determine both elements, but is given considerable leeway due to its superior understanding of the case. *Id.* at 431; *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1282 (7th Cir.1983).

**b. Attorney-by-Attorney Breakdown**

The plaintiffs have requested a total of $412.69 for expenses incurred by Groth, and this entire amount is recoverable. The phase I filing fee of $120.00 is recoverable under § 1920, as is the phase II witness fee of $30.00. The remainder of the requested amount—$262.69—qualifies for out-of-pocket treatment under § 1988. Groth's hotel and mileage costs of $261.06 for the appeal in phase III were necessary and reasonable, as was his phase IV facsimile expense of $1.63.

The plaintiffs also request $952.35 for expenses incurred by Laudig.[31] Of this amount, $335.10 incurred in phase I—$203.10 for copying and $132.00 for map preparation (a printing expense)—is recoverable under § 1920. For phase II, Laudig claims $370.24 in expenses, and $362.40 is recoverable. The full $265.54 for copying expense is reasonable, except for $7.84 that is inadequately explained,[32] as is $65.00 expended for maps (under § 1920) and $39.70 for postage (under § 1988). Only $161.00 of Laudig's phase III request of $186.80 may be recovered, however; his § 1988 expenses for travel ($80.00)

**29.** The list in *Heiar* also included expert witness fees, which are not compensable under § 1988 in this case. *See Casey,* 499 U.S. at ——, 111 S.Ct. at 1148.

**30.** It must be noted that *Casey* has muddied the water a bit in the costs area. *Casey* can be read as preserving the award of incidental costs, apart from the hourly rate, as a component of a "reasonable attorney's fee." It can also be read to say that incidental costs are to be "subsumed" in the hourly rate, so that any non–§ 1920 costs not accounted for in the rate cannot be recovered under § 1988. *See Casey,* 499 U.S. at —— n. 3, 111 S.Ct. at 1141 n. 3 (word "costs" in § 1988 is to be read in harmony with "costs" as used in 28 U.S.C. § 1920).

The better reading of *Casey,* consistent with prior Seventh Circuit law, is that a party may recover expenses "incidental and necessary" to competent representation as part of a "reasonable attorney's fee" awarded under § 1988, even though the expenses are itemized separately. *See Doe v. Village of Crestwood,* 764 F.Supp. 1258, 1262 (N.D.Ill.1991) (applying this interpretation); *Cappeletti Bros., Inc. v. Broward County,* 754 F.Supp. 197, 198 (S.D.Fla.1991) (applying same approach pre-*Casey* ); *see also Heiar,* 746 F.2d at 1203 (Seventh Circuit's pre-*Casey* standard).

**31.** The first entry in Laudig's expense log—a $2.27 copying expense dated March 29, 1990—predates this litigation by nearly a year, and will not be considered connected to this case.

**32.** This amount includes $5.20 on May 18, 1990 (two entries) and $2.64 on June 6, 1990 (two entries).

and postage ($81.00) were reasonable and necessary, but certain copying expense totalling $25.80 is inadequately documented and must be disallowed.[33] Laudig's phase IV request for $59.20 must be pared by $5.89 for inadequately documented copying,[34] but the remainder—$36.83 for copying and $16.48 for postage—is reasonable, necessary, and sufficiently documented. In sum, the plaintiffs are entitled to $911.81 for Laudig's costs.

Finally, the plaintiffs request $446.33 for expenses incurred by Swanson during phases II and III of the case. Of the claimed $282.73 in phase II expenses, $278.83 is recoverable under § 1920 or § 1988—$243.08 for photocopying, $14.25 for postage, $20.00 for filing fees, and $1.50 in facsimile charges. Only a $3.90 "travel expense" disbursement on April 6, 1990 for one "B. Masbaum"—a person with no apparent link to the case—is not recoverable. Of Swanson's $163.60 in phase III costs, however, only $24.50 (for postage, under § 1988) can be recovered. Amounts of $34.10 for copying and $105.00 for filing fees, as § 1920 costs, cannot be awarded, because the court of appeals ordered each party to bear its own costs for the appeal. *See* Judgment (May 21, 1991) (attached as Exhibit B to State Defendants' Opposing Brief); *see also Kemp*, 777 F.2d at 414–15. The plaintiffs therefore are entitled to a total of $303.33 for Swanson's expenses.

## D. Who Must Pay

Now to the really difficult inquiry: who will pay the plaintiffs' award? According to the Supreme Court, the party responsible for paying a plaintiff's attorney's fees and costs is the one who changed position as a result of the suit—i.e., the losing party. *See Garland*, 489 U.S. at 792–93, 109 S.Ct. at 1493–94. In the ordinary case, this party is not hard to find, but this is not the ordinary case. The party that most changed position as a result of the plaintiffs' suit here—and therefore was the true "losing" party—is not a named defendant; it is the Indiana General Assembly, which enacted a reapportionment scheme in response to this suit. Because the General Assembly is not a named defendant, fees or costs cannot be assessed against it.[35]

This does not leave the plaintiffs high and dry, however. Two possible sources for their fees and costs remain—the State defendants and the Rule 19 defendants[36]—and the Court, after carefully considering whether one (or each) of these groups meets the *Garland* criteria, has concluded that the State defendants should bear sole responsibility for paying the plaintiffs' award.

Three key factors support this decision. First, the State defendants, in their capacities as members of the Indiana State

**33.** This amount includes all copying expense claimed for the period of June 29, 1990 through May 19, 1991. *See* Affidavit of Stephen Laudig at 9 (attached as Exhibit B to Plaintiffs' Motion).

**34.** The excluded amounts are $2.25 for Mary 24, 1991; $1.60 for May 31, 1991 (two entries); and $2.04 for June 28, 1991.

**35.** Interestingly, the Supreme Court has noted that for purposes of attorney's fees, a suit against a state agency, or a state official in his or her official capacity, may be considered "for all practical purposes [to have been] brought against the State." *Hutto v. Finney*, 437 U.S. 678, 699, 98 S.Ct. 2565, 2578, 57 L.Ed.2d 522 (1978). In such a case, fees may be assessed against the state, even though it is not a named defendant, if "it is obvious" that any award against a named defendant "will be paid with state funds" anyway. *Id.* at 693, 98 S.Ct. at 2574.

**36.** It may seem unfair for the plaintiffs' award to be paid by a party or parties lacking real power to grant the plaintiffs' requested relief. *See* gen-

erally *May v. Cooperman*, 578 F.Supp. 1308, 1313 (D.N.J.1984), *aff'd and appeal dismissed*, 780 F.2d 240 (3d Cir.1985), *appeal dismissed*, 484 U.S. 72, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987). However, the law indicates that any party which forces a plaintiff to incur substantial and/or additional litigation expenses may be required to pay attorney's fees and costs, even if the plaintiff would have no independent cause of action against that party. *See Charles v. Daley*, 846 F.2d 1057, 1070 (7th Cir.1988), *cert. denied*, 492 U.S. 905, 109 S.Ct. 3214, 106 L.Ed.2d 564 (1989); *United States v. Terminal Transport Co.*, 653 F.2d 1016, 1019–20 (5th Cir. Unit B 1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1613, 71 L.Ed.2d 849 (1982); *May*, 578 F.Supp. at 1317. Moreover, courts often have assessed fees and costs against one party, even though another has been "more 'culpable' or 'causally responsible.'" *Venuti v. Riordan*, 702 F.2d 6, 8 (1st Cir.1983) (citations omitted).

Election Board, are given the duty of administering and enforcing Indiana's election laws. *See* Ind.Code § 3–6–4–12 (enumerating duties). This is important for two reasons. Initially, it means the State defendants, as administrators of the election laws, may properly be charged with any attorney's fees and costs generated by a successful challenge to those laws—despite the fact that they had nothing to do with the laws' passage. *See Venuti v. Riordan*, 702 F.2d 6, 8 (1st Cir.1983) ("[C]ivil rights action costs (including attorney's fees) are often assessed against defendants who enforce the laws instead of those who enact them"). It also means that the State defendants changed position as a result of this lawsuit, because reapportionment (which was caused, at least indirectly, by the suit) changed the laws that they are statutorily charged to administer. *See* Ind.Code § 3–6–4–12(a)(1).

▪ Second, the State defendants (and not the Rule 19 defendants) had the power to end this case at any time through settlement, yet they chose to push for a decision on the merits. *See Brooms v. Regal Tube Co.*, 881 F.2d 412, 425 (7th Cir.1989) (failure to settle "may be a significant factor" in a fees and costs decision); *see also Herron v. City of Chicago*, 618 F.Supp. 1405, 1408 (N.D.Ill. 1985) ("defendants can cut off all liability, including attorneys' fees, by settling a case"). Although the State defendants argue that they supported the plaintiffs throughout the case, and therefore had no reason to settle,

this argument rings hollow. It is true that a defendant which supports a plaintiff in a multi-party case may be entitled to relief from fees and costs, *see, e.g., Bigby v. City of Chicago*, 927 F.2d 1426, 1428–29 (7th Cir. 1991); *May v. Cooperman*, 578 F.Supp. 1308, 1312–16 (D.N.J.1984), *aff'd and appeal dismissed*, 780 F.2d 240 (3d Cir.1985), *appeal dismissed*, 484 U.S. 72, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987), but the State defendants did not support the plaintiffs throughout this case. In fact, they opposed the plaintiffs on at least one significant early issue—the convention of a three-judge court pursuant to 28 U.S.C. § 2284(a).[37] *See* State Defendants' Notice of Requirement of Three–Judge Court (filed Mar. 12, 1990); Plaintiffs' Response to Defendants' "Notice of Requirement of Three–Judge Court" (filed Mar. 14, 1990).[38] If the State defendants had truly supported the plaintiffs, they would have conceded the plaintiffs' right to recovery and agreed to a settlement.[39] By refusing to take this step, the State defendants displayed a hope that they would eventually prevail.[40]

▪ Third, the Rule 19 defendants (unlike the State defendants) clearly won on the only issue that directly affected their interests—i.e., injunctive relief. True, the Rule 19 defendants participated fully in this case, and raised every conceivable defense; in some instances, this would be enough to subject a Rule 19 defendant to fees and costs liability. *See United States v. Terminal*

---

**37.** They also opposed the plaintiffs on the issue of fees and costs—relief that was specifically requested in the complaint. Amended Complaint at 9; *see Young*, 729 F.2d at 565–66 (fees can be "disputed issue" requiring resolution like any other claim); *but cf. May*, 578 F.Supp. at 1316 (opposition on fees not enough to warrant payment liability).

**38.** The State defendants point to Court's earlier order in this case, in which it said that "the State defendants have sided with the plaintiffs," and that the two parties held "apparent parallel interests," *Dickinson*, 740 F.Supp. at 1387, as additional reasons they should not pay any fees or costs. These statements were made in the course of determining standing, so their binding effect in a fee context is questionable. To the extent that they indicate any agreement with the State defendants' claim of support for the plaintiffs throughout the case, however, the Court says

only that it has reconsidered, and now holds differently.

**39.** Such an agreement would have ended this case, because the plaintiffs all along have claimed not to desire any direct relief from the Rule 19 defendants. *See* Plaintiffs' Response to Rule 19 Defendants' Objection to Motion for Leave to File Second Amended Complaint and Motion for Summary Ruling, at 6–7.

**40.** The State defendants make much of their request for the plaintiffs to "be granted all relief the Court deems proper." *See* State Defendants' Amended Answer at 5. Any reliance on this language is misplaced, however, because there is a great difference between asking a court to decide rightly—which this prayer does, and which a court will strive to do in any event—and asking it to grant all the relief the plaintiffs request.

*Transport Co.*, 653 F.2d 1016, 1019–20 (5th Cir.Unit B 1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1613, 71 L.Ed.2d 849 (1982). In this case, however, one critical fact cannot be escaped: the Rule 19 defendants achieved their only real goal—keeping their seats and avoiding a special election. The Court therefore will not assess fees or costs against them.

### III. *CONCLUSION*

In sum, the State defendants are ORDERED to pay the plaintiffs attorney's fees and costs totalling $118,047.43.

SO ORDERED.